■ ROBERT L. SMITH, as Executor of HENRY L. SMITH, Deceased, Respondent-Appellant, v HORNBLOWER & WEEKS-HEMPHILL NOYES, INC., Appellant-Respondent, and ALLEN B. LANG et al., Respondents. — In an action to recover damages for the negligent delay in arranging for the transfer of decedent's securities, plaintiff and defendant Hornblower & Weeks-Hemphill Noyes, Inc. (Hornblower) cross-appeal from so much of a judgment of the Supreme Court, Rockland County (Zeck, J.), dated November 3, 1980, as, after a nonjury trial, awarded plaintiff nominal damages of $10 and punitive damages of $35,000 against defendant Hornblower. Judgment reversed insofar as appealed from, on the law and the facts, with costs to defendant Hornblower, and the complaint is dismissed against defendant Hornblower. On March 8, 1974 Henry L. Smith died in Rockland County and within a short time thereafter his son, plaintiff Robert L. Smith, a resident of Massachusetts, retained Roger Williams, an attorney practicing in Utica, New York to act as attorney for the estate. Williams wrote to defendant Hornblower, a brokerage house, on March 27, 1974, advising it of his representation and inquiring whether or not the decedent had an account with Hornblower. Defendant Jay Slovitt, an account executive with Hornblower, telephoned Williams on March 29, 1974 to say that decedent had a street account with Hornblower; Williams asked for a print sheet listing the securities. After Williams received the printout, he wrote to Slovitt on April 25 and May 10, 1974 asking for several items of statistical information, such as a closing price for the issues held on the date of death and for interest and dividends paid. In May, 1974 a news item in a magazine devoted to investment and securities came to the attention of Williams. Besides being an attorney, Williams was also a licensed stock sales person who assisted some of his clients in the selection and evaluation of securities. The news item reported unfavorably on the financial stability of Hornblower. On May 22, 1974 Williams wrote to Hornblower, noting the item and requesting an "immediate transfer" of the securities out of the street and into the name of the estate of Smith. Williams advised plaintiff, who was appointed executor on May 23, 1974, of what he had done and why. Williams' letter to Hornblower was reviewed by Allen Lang, vice-president and resident manager of Hornblower's home office in New York City, who telephoned Williams to reassure him that Hornblower was not going out of business, as indeed turned out to be the case, and, according to Lang's testimony, he also told Williams that certain documents would be required to initiate the transfer. Lang sent Williams a letter reiterating that Hornblower was not in financial difficulty and enclosing a press release from the company to that effect. The letter did not mention the documentation Hornblower would require to effectuate the transfer of the securities, valued on May 22, 1974 at $312,459.25. Slovitt's testimony corroborated Lang's and was also to the effect that when he told Williams about the documentation that would be needed to transfer the stock, to wit, an affidavit of domicile, a tax waiver, letters testamentary and a death certificate, Williams resisted and insisted that the transfer did not require such documentation. At the time of trial, Williams' memory was impaired as a result of a stroke, and he testified that he could not recall the substance of the conversations with Lang and Slovitt; his daily log of activities verified the fact of the telephone calls but nothing with respect to

documents. Williams also testified, however, that he knew that some documentation would be required to effect a transfer, such as letters testamentary and a death certificate, but nothing beyond that. By letter dated June 26, 1974 Williams again wrote to Hornblower, indicating that nothing had been done about the transfer of the securities which Williams requested more than a month before. Plaintiff followed this up by a letter and telephone calls of his own to Hornblower. On July 16, 1974 Williams sent the four documents that Lang and Slovitt had insisted were necessary to make the transfer — 34 copies of each — and the transfer process was begun. The majority of the stocks were transferred within three weeks thereafter. Plaintiff commenced this action, as executor of the estate, to recover damages for the negligent delay in effectuating the transfer. The trial court, sitting without a jury, determined that, although there were no rules or regulations under existing statutes that obligated a brokerage house to inform a party, who notified it about the death of an investor, what documentation was required to effect a transfer of securities, such a duty ought to be postulated. In addition, although the court noted that it found no direct proof of fraud or bad faith, and no actual damages, since no sales were implicated, the inference to be drawn was that Hornblower had deliberately delayed transfer and, therefore, upon its own motion, the trial court awarded punitive damages. The evidence is insufficient to support an award of damages, either nominal or punitive, and the rules or obligations imposed in the present case and/or as industry-wide practice are unwarranted. The conduct complained of on the part of the individual defendants, attributed to Hornblower on the ground of *respondeat superior,* is neither so morally culpable nor reprehensible as to warrant the imposition of punitive damages (see *Walker v Sheldon,* 10 NY2d 401). Indeed, the record does not sustain even a finding of "ordinary" negligence let alone conduct grossly negligent, carried out in willful disregard of the consequences. Attorney Williams' own testimony was that he knew that some documentation would be required to effectuate the transfer. Nonetheless, when he asked for the "immediate" transfer of the securities out of the street name into the name of the estate on May 22, 1974 and on June 26, 1974, he did not send even the minimum documentation he considered necessary. There is no basis, therefore, upon which to find that it was Hornblower's failure to give notice of the necessary documentation that resulted in a delay in the commencement of a transfer of the securities. Moreover, there was no testimony whatever that at any time prior to the transfer of the account to the estate was there any effort on the part of the representatives of the estate to sell the securities. Even assuming Hornblower had not given any notice (an assumption we do not believe is supported by the record), in the absence of the receipt of any documentation until July 16, 1974, Hornblower was not negligent in failing to initiate the transfer theretofore. In passing, we note that the trial court's finding of no liability on the part of the individual defendants but the imposition, nonetheless, of punitive damages may be read to mean that the trial court thought there was morally culpable conduct by the individual defendants but that they should not be liable in damages; that only their employer should so respond. In view of our disposition of the case, however, this issue is academic. Finally, as the *amicus curiae* contends, there was no authority or necessity for the trial court to promulgate rules of notice. Whether defendants' conduct was reasonable in the circumstances was a question of fact to be determined in light of all the evidence; the imposition of particular standards which would have an industry-wide effect is inappropriate and unnecessary. Mollen, P. J., Mangano, Gibbons and Thompson, JJ., concur.